(78 App. Div. 42.)

## BELL v. MILLS.

(Supreme Court, Appellate Division, Fourth Department. December 18, 1902.)

1. TRIAL—NONSUIT—POWER TO GRANT.
   While the court has power to set aside a verdict as contrary to the evidence, it cannot grant a nonsuit based on a disregard of any of the evidence as untruthful.

2. CONTRACT OF SALE—CONSTRUCTION—QUESTION FOR JURY.
   It could not be said as matter of law that a purchaser of seed oats, who found in the sacks, when they reached him, a card which contained, near the bottom and in smaller type, the conditions on which they were sold, was bound to observe or read this fine print, and to know that it was intended as part of the contract of sale.

3. SAME—EXPRESS WARRANTY—CONSTRUCTION.
   Guaranty by a seedsman that oats sold by him for seeding purposes were "in good condition, choice stock, and well cleaned" did not amount to a guaranty that they were free from mustard seed.

4. SAME—IMPLIED WARRANTY.
   In the absence of an express warranty that oats, sold for seed, were free from mustard seed, the law would imply one.

5. SAME—WAIVER OF WARRANTY—QUESTION FOR JURY.
   A purchaser of seed oats, under an implied warranty that they were free from mustard seed, testified that he did not discover any foreign seed among them until they were nearly all sowed, though he had carefully examined them. Held, that it could not be said as matter of law that the implied warranty against mustard seed had not survived the acceptance and sowing of the seeds by the purchaser.

6. SAME.
   The mere fact that the purchaser sowed a small part of the oats after discovering the presence of some foreign seed, he testifying that he had no knowledge as to its character, did not, as matter of law, operate as an acceptance of all the seeds, free of any implied warranty against mustard seed.

Action by William H. Bell against Frank B. Mills. The trial court granted a nonsuit. Motion for a new trial on plaintiff's exceptions, heard in the first instance in the appellate division. Exceptions sustained, and new trial granted.

See 74 N. Y. Supp. 224.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-LIAMS, and HISCOCK, JJ.

D. E. Brong, for plaintiff.
Ceylon H. Lewis, for defendant.

WILLIAMS, J. The plaintiff's exceptions should be sustained, and a new trial granted, with costs to plaintiff to abide event.

The action was brought to recover damages for breach of warranty upon the sale of seed oats. The case has been in this court before, upon an appeal from a judgment for plaintiff entered upon the verdict of a jury. That judgment was reversed, and a new trial granted. See 68 App. Div. 531, 74 N. Y. Supp. 224. Upon a second trial, the court, without permitting a cross-examination of most of the plaintiff's witnesses, and without waiting for the defendant to put in any evidence whatever, invited a motion for nonsuit, and granted it at once, upon the theory that he was thus following the decision

of this court upon the former appeal. This was an unfortunate disposition of the case, because, upon this motion to set aside such nonsuit and grant a new trial, the case must be considered and determined upon an entirely different statement of the facts, and an entirely different rule must govern our action, than upon the former appeal. Upon the second trial the plaintiff gave very different evidence from that given by him on the first trial as to material facts stated in our former opinion, and the trial court had no power to pass upon his truthfulness in making such change. His credibility upon the second trial was for the jury, and could not be taken from them and determined by the court. While the court, at trial term or in the appellate division, may set aside a verdict as contrary to the evidence after the verdict has been rendered, the trial court cannot grant a nonsuit, based upon a disregard of any evidence as untruthful. Williams v. Railroad Co., 155 N. Y. 158, 49 N. E. 672.

Upon the first trial the evidence showed that the plaintiff, at the time he received the oats and before he sewed any of them, took the card found in the oats and read it. No suggestion was then made that he did not read the whole of its contents. On the second trial he testified that he did not at that time observe or read the part of the card near the bottom and in smaller type, and that he knew nothing of that until long after the oats were all sowed. Upon the first trial the evidence showed little or no examination by the plaintiff of the oats when he received them, and before they were sowed,— merely that he took some up in his hand, and let them run off into the bag. On the second trial, both he and his witnesses testified in great detail to the care used by them in examining the oats before they were sowed. On the first trial it appeared that the most casual examination of the oats would discover the presence of the foreign seeds therein. Upon the second trial it was shown that they were not discovered until nearly all the plaintiff's oats had been sowed, though very carefully examined by the plaintiff and his witnesses. So that, while the facts as stated in our former opinion were that the card in the oats was read by the plaintiff when he received the oats, and the foreign seeds could have been discovered, before the oats were sowed, by the most ordinary and casual examination, and little or no examination was in fact made before the sowing was done, none of these facts upon this motion can be regarded as settled, but the very contrary must be assumed. They were all questions of fact for the jury, and we must assume, for the purpose of this motion, that the jury would have found the facts directly the contrary of those stated in our former opinion.

It is said, however, as to the fine print upon the cards found in the oats, that it was there, and the plaintiff was bound to read it and to know what it was. The claim made by the plaintiff is that he did not know or understand that this fine print upon the bottom of the card was designed to be a contract, binding upon the parties, containing the terms and conditions upon which the oats were to be accepted by him and sowed. If the fine print matter was to be regarded as such a contract, it must have been assented to by the plaintiff; otherwise, the minds of the parties did not meet, and under

all the circumstances it could hardly be held as a matter of law that he was bound to know or understand that it was intended as such a contract, and to read or know its contents. It was very likely a question for the jury whether, coming to him as it did, he was bound to read it and know its contents, and that receiving it and accepting the oats without objection amounted to an assent to the terms thereof as a contract under which the oats were accepted and sowed. Blossom v. Dodd, 43 N. Y. 265, 3 Am. Rep. 701.

We cannot therefore, upon this motion, regard the fine print upon this card as a part of the contract between the parties, as we did do on the former appeal. We must determine this motion, then, upon the revised statement of fact indicated by the foregoing suggestions, and the question now involved may accordingly be stated as follows: The oats having been purchased for sowing, having contained a considerable quantity of mustard seed, which could not be discovered by an ordinary inspection or examination before sowing; more than an ordinary inspection and examination having been made by the plaintiff before sowing the same, and he not having discovered the presence of the mustard seed, the seed having been discovered after most of the oats had been sowed, but not even then known to be mustard seed; the remainder of the oats having been sowed, and the discovery that they were mustard seed not having been made until the crop came up from the ground; and the oats having been sold under the statements made in the catalogue, and delivered to and accepted by the plaintiff under the statements in such catalogue alone,—was there a warranty of the oats, expressed or implied, as to the presence of mustard seed therein, which survived the acceptance and sowing of the oats, of which there was breach, so as to permit the recovery by the plaintiff of damages therefor? The defendant in the catalogue said:

"My Guaranty. I guaranty that all seeds * * * sent out from my establishment shall reach the purchaser * * * in good condition, be fresh and true to name, to grow if properly planted, and if such should not prove the case, I will refill the order, free of charge, providing sufficient proof is given me within a reasonable time. I cannot guaranty crops, and will not be held responsible for them."

And then, in advertising this particular kind of oats, on a subsequent page of the catalogue, in giving the price of the same, he said: "Price of choice stock, well cleaned," etc.; and the plaintiff paid the price so stated for the oats in question. The catalogue did, therefore, contain an express warranty that the oats were "in good condition, choice stock, and well cleaned," when delivered to the plaintiff; and for a breach of this warranty the defendant prescribed the redress which the plaintiff would be entitled to, to wit, the refilling of the order upon giving sufficient proof of the breach in a reasonable time, and he added that he would not guaranty the crop and would not be responsible therefor.

In the absence of the printed matter upon the card, however, and considering the matter in the catalogue alone, it can hardly be said that this warranty covered the defect here complained of,—the presence of mustard seed in the oats. None of these words, used as they

were, fairly implied that the defendant referred to the purity of the seeds and the freedom from noxious seeds, as the language upon the card clearly did. The words used in the catalogue were at best of doubtful meaning, and could not be regarded as notifying the plaintiff that they had so limited defendant's liability as to require the plaintiff to look specially for the presence of noxious seeds, or else lose all right to redress for the presence thereof in the oats, except to have his order refilled. The express warranty in the cata-logue, and the redress provided for a breach thereof, did not extend to the defect here complained of. In the absence of such an express warranty, there can be no doubt that one would be implied. White v. Miller, 71 N. Y. 118, 27 Am. Rep. 13. And under the facts appearing in this record, as we must assume them to be, there is no reason why it should be said as a matter of law that such warranty did not survive the acceptance and sowing of these oats by the plaintiff. Nor are we willing to say, upon the facts now appearing and under the contract here involved, that a sowing of a small quantity of the oats, after he discovered the presence of some foreign seeds therein, the plaintiff having no knowledge as to their character, operated as an acceptance of the oats under the contract, which the implied warranty did not survive, and therefore no recovery could be had for the damages sustained by the use of such oats, at least, as he had already sowed. The oats delivered to his son, it appears, were purchased for him, and no damages are sought in this action by reason of the sowing thereof.

The views hereinbefore expressed lead us to conclude that the plaintiff's exceptions should be sustained, and the motion for a new trial granted, with costs to the plaintiff to abide event. All concur.